## In re Anonymous No. 6 D.B. 94

Disciplinary Board Docket no. 6 D.B. 94.

ELLIOTT, *Member,* February 9, 1999—Pursuant to Rule 218(c)(5) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania submits its findings and recommendations to your honorable court with respect to the above-captioned petition for reinstatement.

## I. HISTORY OF PROCEEDINGS

Petitioner, [   ], filed a petition for reinstatement on October 22, 1997. Petitioner was suspended from the practice of law for one year and one day by order of the Supreme Court dated January 31, 1996. Petitioner was suspended as a result of his failure to reveal on his application for admission to the Pennsylvania Bar that he had been arrested in 1985.

Reinstatement hearings were held on April 3, 1998 and April 27, 1998 before Hearing Committee [   ] com-

prised of Chair [    ], Esquire, and Members [    ], Esquire and [    ], Esquire. Petitioner was represented by [    ], Esquire. Office of Disciplinary Counsel was represented by [    ], Esquire.

The Hearing Committee filed a report on August 14, 1998 and recommended that the petition for reinstatement be granted. No briefs on exception were filed by the parties.

This matter was adjudicated by the Disciplinary Board at the meeting of October 5, 1998.

## II. FINDINGS OF FACT

The board makes the following findings of fact:

(1) Petitioner was born on April 2, 1963 and was admitted to the bar in Pennsylvania on January 2, 1991. His current address is [    ].

(2) On July 8, 1994, a hearing was held on a petition for discipline filed against petitioner arising from his failure to reveal in his application for admission to the Pennsylvania Bar that he had been arrested in 1985.

(3) By order of the Supreme Court of Pennsylvania dated November 16, 1995, petitioner was transferred to inactive status pursuant to Pa.R.D.E. 219, effective December 16, 1995. This transfer was due to petitioner's failure to pay his attorney's annual fee.

(4) Petitioner was notified by letter of November 17, 1995 of this transfer and his obligations thereunder.

(5) By order of the Supreme Court of Pennsylvania dated January 31, 1996, petitioner was suspended from the Pennsylvania Bar for a period of one year and one day. This suspension was based on his failure to reveal his arrest on the bar application.

(6) Petitioner was informed of the suspension and his obligations thereunder.

(7) Petitioner failed to provide the mandated notice to the [ ] Bar Association to remove his listing from its legal directory.

(8) In February 1996, petitioner filed a petition, and in March 1996, he filed a supplementary petition. These petitions requested that his suspension be made retroactive to November 16, 1995, the date of petitioner's transfer to inactive status. These petitions were denied by Supreme Court order dated April 8, 1996.

(9) In May 1997, under the caption *[ ], Petitioner v. The Disciplinary Board of the Supreme Court of Pennsylvania and The Continuing Legal Education Board of the Supreme Court of Pennsylvania,* petitioner filed in the Supreme Court of Pennsylvania an application for leave to file original process and declaratory judgment. This action sought to avoid the requirement that petitioner comply with the provisions of the Pennsylvania Rules of Continuing Legal Education as a condition of his reinstatement.

(10) By order dated August 1, 1997, the Supreme Court granted the application to proceed in forma pauperis and denied the petition for declaratory judgment and motion to strike.

(11) On October 22, 1997 petitioner filed the instant petition for reinstatement.

(12) From petitioner's 1991 admission to the bar to his inactive status in November 1995, his legal employment consisted of a variety of short-term positions. He worked as general counsel to a corporation in Florida for seven months in 1991, although he was not admitted to the bar. From 1993 to 1995, petitioner was employed as general counsel to a Pennsylvania company.

(13) After petitioner's transfer to inactive status and his suspension, he held a variety of positions, both legal and non-legal, in which he has apparently been unable to sustain a successful employment relationship, and has been unemployed since September 1997. (N.T. 4/3/98 p. 27.)

(14) Petitioner completed 37 credit hours of CLE and reads the [   ] and legal treatises. To keep current on the law, petitioner also reads newspapers and watches television news shows pertaining to current legal events.

(15) Petitioner presented the testimony of two character witnesses. [A], Esquire, has known petitioner since law school. [A] testified that he has not talked to petitioner in approximately one year and does not socialize in the same circle as petitioner. (N.T. 4/3/98 pp. 103-104.) [A] testified that he had not discussed petitioner with anyone but the other character witness on the day of the hearing. (N.T. 4/3/98 pp. 103-104.)

(16) [B], Esquire, has known petitioner since law school. Although [B] and petitioner are socially friendly, the witness testified that he never discussed with acquaintances the fact of petitioner's suspension, and, in fact, petitioner did not tell him of the suspension until sometime after January 1998. (N.T. 4/3/98 pp. 112-13.)

(17) In addition to the various petitions filed by petitioner regarding the disciplinary proceedings, petitioner filed a lawsuit on his own behalf against [C] Company and [D] Insurance. This suit was filed in the United States District Court for the [   ] District of Pennsylvania and involved an accident petitioner suffered in an elevator in Florida.

(18) Petitioner initiated and pursued this litigation even though he was aware that the two-year Pennsylvania stat-

ute of limitations barred his action. Apparently, he argued that the federal court should apply the four-year Florida statute of limitations. Confronted with Pennsylvania's borrowing statute (42 Pa.C.S. §5524) he argued that statute was unconstitutional.

(19) Petitioner has a pending application for admission to the Florida Bar. This is the third application filed by petitioner seeking admission in Florida. The other two were denied.

(20) Disciplinary Counsel [   ] suggested to petitioner and his own counsel that petitioner might benefit from discussing a mentor relationship with [E], Esquire, executive director of the [F]. [E] did not and does not employ petitioner, but he testified that he met with petitioner, and while he did not know that their discussions used the term "mentorship," he said he would be available to petitioner to "discuss problems with him, give him advice. . . ." (N.T. 4/27/98 p. 7.)

## III. CONCLUSIONS OF LAW

Petitioner has failed to meet his burden of proving by clear and convincing evidence that he has the moral qualifications, competence and learning in the law required to practice law in this Commonwealth.

Petitioner has failed to demonstrate that his resumption of the practice of law will neither be detrimental to the integrity and standing of the bar or the administration of justice nor subversive of the public interest.

## IV. DISCUSSION

Pursuant to Pa.R.D.E. 218(a), an attorney who is suspended from the practice of law for a period exceeding

one year may not resume practice until reinstated by order of the Supreme Court of Pennsylvania.

In order for petitioner to gain reinstatement after a suspension exceeding one year, it is petitioner's burden to prove by clear and convincing evidence that he possesses the moral qualifications, competence and learning in the law necessary to practice law in Pennsylvania, and that the resumption of the practice of law by petitioner will be neither detrimental to the integrity and standing of the bar or the administration of justice nor subversive of the public interest. Pa.R.D.E. 218(c)(3)(i).

In determining whether petitioner clearly demonstrated his present fitness, the board must consider the nature of petitioner's misconduct, his present competence and legal abilities, his character, his rehabilitation, and the degree of remorse expressed. *Philadelphia Newspapers Inc. v. Disciplinary Board of the Supreme Court,* 468 Pa. 382, 363 A.2d 779 (1976).

Petitioner was suspended for his failure to disclose a prior arrest on his Pennsylvania Bar application. Question 14(b) on the application asked: "Have you ever been arrested or prosecuted for any crime (other than a summary motor vehicle violation)?" Petitioner checked the "no" answer box in response. Petitioner was arrested in 1985 on a criminal charge of solicitation.

Petitioner was admitted to the Pennsylvania Bar in January of 1991.

In March of 1991, petitioner applied for the bar in Florida. Question 20a of the Florida Bar application directs applicants to:

"List all instances in your entire life (including while you were a juvenile) in which you have been arrested, detained or restrained, given a warning or taken into cus-

tody or accused, formally or informally, of the violation of a law, or ordinance, or accused, formally or informally, of committing a delinquent act." (Exhibit P-5, p. 7.)

The application includes the following instruction:

"In answering questions 20-21, you are warned that no statute, court order of legal proceeding withholding adjudication, expunging the information required herein, or dismissing, vacating or setting aside any arrest, accusation or conviction, or purporting to authorize any person to deny the existence of such material shall excuse less than full disclosure, Irrespective Of Any Advice From Any Source That Such Information Need Not Be Disclosed. . . ." (Exhibit P-5, p. 7.)

Petitioner checked the "no" answer box in response. The Florida Board of Bar Examiners· discovered this omission and denied petitioner's application. Petitioner later revealed the omission to the Pennsylvania Board of Law Examiners in April of 1992. Disciplinary proceedings followed, resulting in petitioner's suspension for one year and one day by order of the Supreme Court on January 31, 1996.

Petitioner testified on his own behalf as to the misconduct that led to his suspension. He testified that he failed to reveal the arrest because he was scared of the consequences of disclosing it:

"It's my belief I was in denial, I was embarrassed and I think I repressed it to some extent. I take full responsibility for it. I am sorry for what I did. I have come a long way." (N.T. 4/3/98 p. 32.)[1]

---

1. This testimony is especially positive in light of the initial Hearing Committee report and recommendation which reported his testimony was "he had no recollection of having been arrested when he filled out his application for the Pennsylvania Bar and that he was in a

Petitioner filed a petition for reinstatement on October 22, 1997 and reinstatement hearings were held on April 3 and April 27, 1998. A stipulation of the parties was offered into evidence. Petitioner testified and presented the testimony of two character witnesses. Office of Disciplinary Counsel's case consisted of two witnesses and 61 exhibits.

Having outlined the misconduct, the board next considered petitioner's present competence and legal abilities. The record establishes that petitioner has been unemployed since September 1997, and between his November 1995 transfer to inactive status and his April 1998 reinstatement hearings, petitioner had difficulty sustaining employment. (N.T. 4/3/98 p. 78.) He did, however, work in the summer of 1997 as a document reviewer for the [F]. Prior to petitioner's transfer to inactive status and his suspension, he held a number of different positions, including telemarketer, road service counselor, legal assistant, document reviewer and researcher, and general counsel to a Pennsylvania company and a Florida corporation. Petitioner's tenure at these positions was short.

During his suspension, petitioner filed two pro se lawsuits. One case was filed against [C] Inc. and [D] Insurance as a result of a Florida accident which injured petitioner. The other matter was filed against the Disciplinary Board of the Supreme Court and the Continuing Legal Education Board, challenging the requirement that he fulfill his CLE credits and pay the costs of his prosecution

very rushed state because he was in the middle of exams." The Hearing Committee concluded petitioner was "not candid" before this panel "and believed his testimony to be ludicrous and not truthful." Report of Hearing Committee no. 1.02 filed 1/26/95, p. 6.

prior to the board's consideration of his reinstatement petition. Office of Disciplinary Counsel presented evidence on these matters to demonstrate petitioner's lack of competence.

Office of Disciplinary Counsel presented evidence that at the time he filed the personal injury suit, he knew it was time-barred by the two-year Pennsylvania statute of limitations. When questioned as to his motives, petitioner testified that he thought his case had merit since he argued the unconstitutionality of the Pennsylvania borrowing statute; if successful in that argument, the court would have applied the four-year Florida statute of limitations and not the two-year Pennsylvania statute. Interestingly, he testified he might not have filed the suit if he were acting as the attorney in the matter, and not the pro se plaintiff. (N.T. 4/3/98 pp. 44, 88-89.) He testified he was desperate and hoped he could obtain a settlement: "I had to somehow get money together to pay for my disciplinary bills." He persisted in this desperation by appealing the dismissal of the federal action to the United States Court of Appeals for the Third Circuit and when that was unsuccessful, he filed a writ of certiorari to the United States Supreme Court. Office of Disciplinary Counsel offered the suit against the Disciplinary Board and the CLE Board as evidence of petitioner's competence and learning in the law; it also reflects on his judgment and character.

Petitioner testified that in order to maintain his learning in the law and competence, he took 37 CLE course credits and has regularly read the [  ] and other legal treatises. (N.T. 4/3/98 pp. 49-50.) The evidence above is not sufficient to sustain petitioner's burden under Rule 218(c)(3)(i).

Disciplinary Counsel [ ] suggested to petitioner that he might benefit from discussing a mentor relationship with [E], Esquire, executive director of the [F]. [E] testified that he met with petitioner approximately three times and talked with him various other times. (N.T. 4/27/98 p. 7.) Careful to contextualize the "mentorship" and explain there was no employment prospect for petitioner, [E] described the relationship as one in which petitioner could use Attorney [E] as a sounding board and seek guidance in furthering his career. The Hearing Committee recommended that petitioner's petition for reinstatement be granted. The committee's reinstatement recommendation appeared to turn in large part on Attorney [E's] willingness to be a sounding board for petitioner. While this is certainly an advantageous relationship for petitioner, on its own it cannot be the basis for granting his petition for reinstatement.

The next issue for the board on a reinstatement petition is to determine whether by clear and convincing evidence the petitioner met the burden of proving moral fitness. Typically, this is done through the presentation of favorable character testimony, but the testimony of this petitioner's two character witnesses is hardly compelling. *In re Anonymous No. 90 D.B. 85,* 17 D.&C.4th 548 (1992); *In re Anonymous No. 45 D.B. 84,* 15 D.&C.4th 321 (1992). Although Attorney [B] testified that petitioner's reputation was as an honest and truthful individual and he never heard negative things about him, such reputation evidence carries little weight in light of the fact that the witness did not know of petitioner's suspension and the reasons for it until shortly before the reinstatement hearing. Petitioner did not sustain his burden of proof by clear and convincing evidence that he is morally qualified to practice law in Pennsylvania.

Cross-examination revealed that one witness, [A], Esquire, had not seen petitioner in at least nine months, but for a brief conversation the day of the reinstatement hearing with the other character witness. He never had the opportunity to discuss petitioner's reputation with members of the community. (N.T. 4/3/98 pp. 103-105.) The second character witness, [B], Esquire, testified on cross-examination that he did not know petitioner had been suspended until after he spoke with Office of Disciplinary Counsel in January 1998. He further testified that he never discussed the fact of the suspension with others. (N.T. 4/3/98 pp. 112-13.) Petitioner also testified regarding his moral fitness:

"Basically I uphold virtues of truth and justice and responsibility . . . I've learned from my mistake . . . It was an aberration, but I have suffered. This has been hanging over my head for six years . . . I basically accept responsibility and [want to] be able to move forward professionally and financially so that I can become a productive citizen and the good lawyer that I am."

While the board is impressed with petitioner's testimony, it does not meet his burden of proof required by 218(c)(3)(i).

The board finds that petitioner did not meet his burden of proof by clear and convincing evidence that he is morally qualified, competent and learned in the law. The board recommends that petitioner's petition for reinstatement be denied.

## V. RECOMMENDATION

The Disciplinary Board of the Supreme Court of Pennsylvania recommends that petitioner, [    ], be denied reinstatement to the practice of law.

The board further recommends that, pursuant to Rule 218(e), Pa.R.D.E., petitioner be directed to pay the necessary expenses incurred in the investigation and processing of the petition for reinstatement.

Board Members Marroletti and Nix dissented.

Board Member Caroselli did not participate in the consideration and disposition of this matter.

Board Member Schultz did not participate in the October 5, 1998 adjudication.

---

## CONCURRING OPINION

DONOHUE, *Member,* February 9, 1999—I join in the opinion of the majority and the recommendation that the petitioner be denied reinstatement.

The petitioner's evidence of moral fitness to practice law was neither clear nor convincing.

The petitioner presented two character witnesses in support of his moral fitness. [B], Esquire, his acquaintance since law school and a social friend, did not even know that the petitioner had been suspended from the practice of law until approximately January 1998. This was two years after the date of the suspension. It is hard to imagine that the petitioner and [B] had sufficient interaction to put this witness in a position to testify as to moral fitness when he did not have the most rudimentary knowledge about the petitioner's professional status. Although it is understandable that the petitioner did not want to publicize the underlying reasons for his suspension, this character witness did not even know of the fact of the suspension.

The second character witness, [A], Esquire, hadn't seen the petitioner in almost a year, does not socialize in the same circles and never discussed the petitioner's character with anyone else in the community. [A's] testimony can be given very little weight. In essence, the petitioner presented two character witnesses who, at best, had nothing negative to say about him.

On the issue of competence, in most cases, this member would be persuaded that taking 37 CLE course credits would be sufficient to carry the petitioner's burden. However, this petitioner's pro se legal activities during his suspension evidence either a complete misunderstanding of, or a total disregard for, the appropriate purpose for commencing a lawsuit, *i.e.,* to redress an injury. The petitioner's admission that he may not have filed the stale personal injury claims "on behalf of a client" points to the conclusion that he understood that his filings on his own behalf were questionable if not improper. Whether this activity indicates incompetence or lack of appropriate character to practice law is not relevant. Either way, it is evidence against his reinstatement at this time.

Board Member Cunningham joins in this concurring opinion.

----

## DISSENTING OPINION

NIX, *Member,* February 9, 1999—

### I. DISCUSSION

The sole question to be decided by this board is whether the petitioner's request for reinstatement to the bar of

the Supreme Court of Pennsylvania should be granted. This determination is based on the petitioner's providing proof, by clear and convincing evidence, that he has the moral qualifications, competency and learning in the law required for admission to practice law, and that the resumption of the practice of law will neither be detrimental to the integrity of the bar or administration of justice, nor subversive of the public interest. Pa.R.D.E. 218(c)(3)(i).

In determining whether the petitioner clearly demonstrated his present fitness, the board must consider the nature of petitioner's misconduct, his present competence and legal abilities, his character, his rehabilitation, and the degree of remorse expressed. *Philadelphia Newspapers Inc. v. Disciplinary Board of the Supreme Court,* 468 Pa. 382, 363 A.2d 779 (1976).

In the instant case, the petitioner was suspended from the practice of law for a period of one year and one day for failing to disclose a prior arrest on his Pennsylvania Bar application. The majority does not provide any illumination on the facts of this case that might have motivated the petitioner to answer the question on the bar application untruthfully. The facts surrounding the petitioner's misconduct involve his arrest for solicitation of a male police officer while an undergraduate. The ultimate resolution of the arrest was a dismissal of all charges. Given the nature of the arrest, it is not unreasonable to believe the petitioner's testimony that he believed that an arrest of this type on his record might very well be a bar to future employment. Further, given these facts, the petitioner's statement that "I was embarrassed and I think I repressed it to some extent" can only be deemed to support this point of view. Of course, this does

not lessen the misconduct, but it is an indicator of the petitioner's state of mind and why he might have chosen a particular course of conduct.

Clearly, the Hearing Committee took these factors under consideration and in recommending reinstatement, opined: "that despite personal and professional problems, which the petitioner has experienced in the past, we are hopeful he has grown and developed both personally and professionally as a result of his misconduct and what has turned out to be a lengthy suspension. We believe he now possesses the moral character and learning in the law necessary to obtain readmittance to the bar."

The majority ignores the findings of the Hearing Committee. This is difficult to understand, given the learned members comprising this committee who had the advantage of evaluating the petitioner's credibility. The deference that this board usually gives to a hearing committee is ignored in this instance.

The majority bases its decision to recommend the denial of reinstatement by determining without any real factual basis that the petitioner did not meet its burden of proving his competence and learning in the law. The record supports that the petitioner has met this burden based on his having taken 37 CLE course credits and by regularly reading the [ ] and other legal treatises. (N.T. 4/3/98 pp. 49-50.) In other cases, such a record would certainly be acceptable. It appears that the majority's reluctance to find the petitioner learned in the law is based in part on the petitioner's difficulty in sustaining employment. The majority goes on to point out that during the period of the petitioner's suspension, he held a number of different positions. It seems to me that anyone whose profession is taken from them for whatever pe-

riod of time would face some period of adjustment. Any forced or mandatory career change is very likely to result in some missteps in the finding of new employment. If we are not willing to accept this premise, we will encourage suspended attorneys to find employment within the profession, and such an approach is clearly fraught with danger. This board is currently facing the problem of how to protect the public from suspended or disbarred attorneys who under the guise of acting in the capacity of a paralegal, in effect, continue their practices during their suspensions. By punishing a suspended attorney for not maintaining consistent employment, we are forcing the same attorney to remain in the profession in a lesser capacity that we know is a cause of greater difficulties. This result cannot be supported and should not be used as a factor in denying this petitioner's reinstatement.

In *In re Anonymous No. 82 D.B. 87,* no. 725 Disciplinary Docket no. 2 (Pa., Jan. 22, 1997), a petitioner's seven-year absence from the bar was spent working for her church in an unpaid position. She was unable, even after exhaustive effort, to obtain employment. This factor was not considered to be a fact that should be held against her. Although this petitioner spent a far greater period of time away from the bar and her misconduct was far more severe than the petitioner's in the present case, she was still determined to be fit to resume the practice of law. Clearly, this case supports my position that the majority erred in finding that this petitioner's employment history during his suspension be a factor in denying his petition for reinstatement.

The majority also questions the petitioner's pursuit of two pro se lawsuits during this suspension. In its review of the petitioner's thought process and strategy in these

two actions, the majority makes the determination that the petitioner's actions on their face evidence some lack of competency. Although the petitioner's lawsuits appear to be poorly reasoned, it would be a tremendous leap by this board to start looking into a practitioner's professional techniques in determining his competence. Such determinations are outside this board's jurisdiction and I would be most leery of accepting this gauntlet.

The majority also appears to be concerned with the number of character witnesses presented by the petitioner. It has always been my opinion that one witness, if compelling, should suffice in these circumstances. This point of view is well-founded. In *In re Anonymous No. 82 D.B. 87,* no. 725 Disciplinary Docket no. 2 (Pa., Jan. 22, 1997), the petitioner, after a seven-year absence from the bar, presented only a single witness at her hearing and was reinstated. Clearly, the number of witnesses presented at a hearing for reinstatement is not determinative of an attorney's fitness to practice law.

The majority also gives great weight to the fact that neither character witness had knowledge of the facts of the petitioner's suspension prior to the time of the reinstatement hearing. Such a fact should only be seen as strengthening the petitioner's case. He has testified that he was embarrassed by the factors surrounding his misconduct and perhaps repressed them. Given his state of mind, it is certainly plausible that he would not freely share with others the details surrounding his suspension, absent some overwhelming necessity to do so. Clearly, given the facts set forth in the present matter, no negative connotations should be raised by this petitioner's failure to disclose the content of his misconduct to anyone, prior to his hearing.

The majority also gives very little weight to the petitioner's willingness, at the suggestion of Disciplinary Counsel, to develop a mentor relationship with [E], executive director of the [F]. The majority, while finding the mentoring program to be a positive step by the petitioner, determined that the Hearing Committee's apparent reliance on this relationship was inadequate to support their recommendation for reinstatement. This logic on its face is circular and patently unfair. It appears that the majority will accept only those interpretations that taken alone and perhaps out of context shed a dark light on the petitioner, while ignoring or diminishing any conclusions that would bolster or support the petitioner's case. Since I know this is not the majority's intention, I must conclude that they have not had the opportunity to fully digest the practical effect of their determination.

Finally, the petitioner to his credit makes a most difficult admission. He does so in the following statement:

"Basically, I uphold virtues of truth and justice and responsibility . . . I've learned from my mistake . . . It was an aberration, but I have suffered. This has been hanging over my head for six years . . . I basically accept responsibility and [want to] be able to move forward professionally and financially so that I can become a productive citizen and the good lawyer that I am." (N.T. 4/3/98 p. 113.)

It is because of the petitioner's willingness to accept the results of his misconduct, together with his showing by clear and convincing proof that he possesses the moral qualifications, competence and learning in the law necessary to practice law in Pennsylvania, and that his resumption of the practice of law will be neither detrimental to the integrity and standing of the bar or the administration of justice nor subversive of the public interest, that leads

me to dissent from the majority opinion. I agree with the Hearing Committee that the petitioner be given the opportunity to put this sad chapter of his life behind him. I believe he has taken every action necessary to be reinstated and would recommend that the petitioner's petition for reinstatement be granted.

Board Member Marroletti joins in this dissent.

### ORDER

And now, April 13, 1999, the petition for review and for oral argument and briefing schedule is denied and, upon consideration of the report and recommendations of the Disciplinary Board dated February 9, 1999, the petition for reinstatement is denied. Pursuant to Rule 218(e), Pa.R.D.E., petitioner is directed to pay the expenses incurred by the board in the investigation and processing of the petition for reinstatement.